Manuel **TORRES CRUZ,** Plaintiff,

v.

**HUDSON STEAMSHIP COMPANY, Ltd.,**
Defendant and Third-Party Plaintiff,

v.

Luis A. **AYALA COLON,** Third-Party
Defendant.

Civ. No. 169–59.

United States District Court
D. Puerto Rico,
San Juan Division.

June 26, 1962.

José N. Dapena Laguna, Ponce, P. R., Jose A. Suro and Miguel J. Rios Lugo, San Juan, P. R., for third-party defendant.

RUIZ-NAZARIO, Chief Judge.

This action was tried before the Court, without a jury on November 20, 1961 at 9:30 o'clock in the morning.

At the close of plaintiff's case, counsel for the plaintiff Manuel Torres Cruz and for the defendant and Third Party Plaintiff advised the Court, that the plaintiff and said defendant had stipulated to settle the controversy between themselves and that judgment be entered for the plaintiff, and against said defendant for the sum of $12,000.00, each party to pay its own costs.*

As regards the controversy between said defendant, as Third Party Plaintiff and the Third Party Defendant Luis Ayala Colon, trial was to proceed, Third Party Defendant not questioning, however, the reasonableness of the above settlement between the plaintiff and the defendant.

The defendant, as Third Party Plaintiff introduced as evidence in support of its Third Party complaint, in addition to the oral testimony already adduced on behalf of the plaintiff, the testimony of another witness, as well as documentary evidence consisting of the Charter Party between it and Ponce & Panama Marine, S. A. of Panama, which was marked Exh. 1—Third Party Plaintiff.

Then, Third Party Defendant introduced the testimony of Pedro Echevarria, and rested.

No evidence on rebuttal was offered by Third Party Plaintiff, and the pending Third Party controversy remained submitted on the basis of all the evidence adduced at said trial, and memoranda of law on the issue of liability of the third party defendant under the evidence of record to be filed alternatively as fol-

Nachman & Feldstein, San Juan, P. R., for plaintiff.

Hartzell, Fernandez & Novas, San Juan, P. R., for defendant and third-party plaintiff.

---

* The judgment thus stipulated was entered in writing on November 21, 1961, the same was paid and satisfied by the defendant on the same date, and plaintiff, on June 24, 1961, withdrew the funds deposited in satisfaction thereof.

lows: by Third Party Defendant within fifteen days after said termination of the trial; by Third Party Plaintiff, within 15 days after receiving copy of Third Party Defendant's memo; Third Party Defendant to have 5 additional days to reply to the above.

It was not until March 27, 1962 that the last of said memos was filed and the matter finally came under submission.

I have given the most thorough consideration to the pleadings, the evidence of record and to the memoranda submitted by said parties and I am now duly advised in the premises.

The issue to be decided is whether, under the evidence adduced, the Court may be justified in holding that the Third Party Defendant Luis Ayala Colon, as stevedoring contractor for the unloading of the "SS Hudson Firth," at the port of Ponce breached his warranty to perform the stevedoring operations in a reasonably safe and workmanlike manner.

There is no question that the vessel's winch in use at Hold No. 5, where the stevedoring operations in which the plaintiff was engaged were being carried out, was defective and that such defect caused the vessel to become unseaworthy and made the defendant liable to the plaintiff for the damages he suffered on account of the accident in question here.

It is for this reason that the defendant, at the close of plaintiff's case, stipulated that a judgment in the latter's favor, for the sum of $12,000.00, be entered, as it later was, defendant having fully paid the same.

This does not mean, of course, that the Third Party Defendant may be considered released of his warranty to perform the stevedoring operations in a reasonably safe and workmanlike manner.

For Third Party Defendant to be so released and discharged the weight and preponderance of the evidence must establish not merely that the winch, which forms part of the vessel's equipment and whose repair and upkeep in good working condition rests on the vessel and its crew is defective, but also that the officers in charge of the vessel were given adequate notice of the defect and sufficient opportunity to repair the winch and keep it in good working condition to permit the Third Party Defendant to discharge his stevedoring operations safely.

The uncontradicted testimony of almost all the witnesses, most of them having given testimony on behalf of the plaintiff, was to the effect that the winch was shown to be defective since the unloading operations at Hold No. 5 started; that the foreman had to report to the ship's mate, 3 or 4 times that the winch was out of order; that the ship's mate reported the complaints to the vessel's engineer, who in every instance made adjustments and greased the winch; that Third Party Defendant's foreman in charge of said operations insisted in stopping the operations until the winch was properly and safely repaired; that he was finally told that the winch could not be repaired until 7 or 8 days later, when the vessel would be at sea; that the vessel had to leave as early as possible, and they could not afford a work stoppage.

So, Carlos Cintron, winchman, testified, that since the first day of work they noticed that the winch was defective; when the bucket was full, the winch jerked. Vessel's engineer, when sent over by the mate, tightened some screws and greased the winch, telling the foreman that the winch was now alright and that they could go on working. Nevertheless the winch continued not operating properly; that the winches were never repaired to be in good working condition at any time, that the ship's officers are the ones who repair the winches and determine whether the same are in good working condition. That he, as a winchman, is able to state whether the winch has been properly repaired.

Julio Alvarez, also a winchman, testified that from the very first day, when

they started to work, they noticed that the winch was defective.

He ratified the testimony of witness Cintron regarding the repairs that had to be made to the winches.

He further testified that after the first repair, the winch showed to have the same defect; and that the same thing happened after the second repair. That the winch, was always working defectively, and that the Chief Engineer of the vessel told him to continue working with the defective winch. The Chief Engineer is the one who decides whether they should continue working.

Pedro Echevarria, the Superintendent of Piers for Luis Ayala Colon, testified that during the first day of work there was an abnormality in the winches, that he went to the First Officer of the vessel as soon as the situation was reported to him; that the First Officer went and talked with the Engineer, and came back advising that repairs were going to be made. That he went 3 or 4 times to report to the First Mate about the winches being defective; that he told the witness that the repairing would take 8 to 10 days.

That the First Officer said that the Engineer had told him that these repairs had to be made at sea. That they sent an employee of the vessel to undertake to make some repairs to the winch; that said ship's employee had to come 3 or 4 times to repair the winch.

After the First Mate gave the witness the information that the repairs would take 8 or 9 days and would be done in the high seas, he told the witness "To keep on unloading the ship under those conditions, because the unloading of that ship could not be stopped."

Counsel for Third Party Plaintiff, while this witness was testifying, stated:

"I will stipulate that neither the foreman nor the stevedores nor anybody did anything to those winches. I am willing to stipulate that."

The witness finally testified that on all occasions in which his attention was called as to the condition of the winches he went, at all times, to the ship's officers.

After the accident here in question, the winches were no longer used.

The winches are always used for these unloading operations, and not the cranes, because it is less expensive to the steamship company to use the winches.

Defendant, Third Party Plaintiff, offered no evidence whatsoever to contradict the testimony of the above witnesses, even though it knew from the pleadings and from the answers to the interrogatories that the above matters would come up at the trial.

On the basis of the above discussed evidence, defendant-third party plaintiff's contention about third party defendant's liability cannot be upheld.

In support of its contention third party plaintiff principally relies in Revel v. American Export Lines, D.C.E.D.Va. 1958, 162 F.Supp. 279, a case in which a factual situation somewhat similar to that involved herein apparently existed, and in its memorandum quotes language contained in H.N. (9) at pp. 287 and 288 thereof.

In addition, it stresses the fact that Revel supra was affirmed by the United States Court of Appeals for the Fourth Circuit in 266 F.2d 82, and quotes from p. 87 of said upper court's opinion.

However, as appears from the opinion of the Appellate Court in the aforesaid case (see 266 F.2d p. 83), as regards the longshoremen's claim that they reported the winch's defective condition to the ship's mate who, according to them, instructed them to continue operating the winch as best they could, "The *ship's mate* and the *other officers* to whom he would have relayed such a report *denied receiving notice of the defective condition*". (Emphasis supplied).

Here the third party plaintiff failed to offer any testimony whatsoever in that connection.

Again at p. 87 in finding no basis in the record for a legally significant distinction from Crumady v. Joachim Hen-

drik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, or from Calmar S.S. Corp. v. Nacirema Operating Co., 4 Cir. 1959, 266 F.2d 79, the Court of Appeals in F.N. 6, in the same page, states:

"There was no finding below as to the truth of the testimony by the longshoremen that the ship's officers were informed of the defect in the winch and assented to its continued use; and the parties having failed to argue the possible legal significance of such a finding, if made, we need not consider this aspect."

Here the testimony of the longshoremen, winchmen and third party defendant's ship superintendent was not in the least contradicted and the court has given, and does hereby give full credibility to such testimony and, on the basis thereof Revel's factual situation is inapposite to the one here existing and said case, as per the quoted language of Judge Sobeloff's opinion, speaking for the Appellate Court, makes said case inapplicable here.

Neither is Beard v. Ellerman Lines, Ltd., 3 Cir. 1961, 289 F.2d 201, also cited by the third party plaintiff, applicable to the situation here. There the stevedoring contractor, in discharging the bales of wool, used certain bale hooks provided by said contractor which, although allegedly falling within the custom of the port, were considered a dangerous way of discharging. The hooks were not provided by the vessel and the accident was caused by such dangerous hooks and not by any defect in the vessel's equipment.

In Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, what the Supreme Court had before it, was simply whether the question of liability of the stevedoring contractor should have been also submitted to the jury and, not summarily disposed of by the trial court. In reversing the judgment so dismissing the action against the stevedoring contractor and directing that a new trial by jury be held, the Court in discussing the possibility of a judgment in favor of the vessel's owner, based on the liability of the stevedoring contractor, said that the former would be entitled to indemnity "*absent conduct on its part sufficient to preclude recovery.*" (355 U.S. at p. 567, 78 S.Ct. at p. 441—Emphasis supplied).

In a supplemental memorandum letter, dated February 21, 1962, third party plaintiff cited United States Lines Company v. E. J. Lavino & Company, D.C. E.D.Pa.1961, 198 F.Supp. 483.

Neither is that case applicable to the factual situation prevailing under the evidence in the present action.

There the company, which was performing the stevedoring operations on behalf of the consignee, removed the runner regularly attached to one of the winches at the forward end of No. 3 hold, and substituted as a "land fall" a wire runner belonging to said stevedoring company. This runner wire was inadequate and improper, not fit for the use to which it was put and the injuries suffered by the plaintiff longshoreman were caused by the use of said improper and inadequate runner. The runner was not long enough to accommodate the destination of the bucket. (See H.N. 1 and F.N. 3 at pp. 485, 486).

Under the evidence in the present action no such situation existed here.

The factual situation here is more apposite to that which existed in Piscopo v. United States, D.C., 167 F.Supp. 777, cited by third party defendant.

There the machine made available by the United States to perform the work was inadequate. The foreman had to decide whether the work should go forward as to the plaintiff and his helpers, or cease until a hi-lo with a guard should become available.

At p. 780, the court stated the following:

"Since the issuance of hi-lo # 25 to the plaintiff was the act of Ceserano, the Army foreman in charge of equipment, and the lack of a guard was not only obvious, but the subject of a protest as has been found, on the part of the plaintiff, it is a

tenuous argument at best to urge that American was negligent in *failing to reject the equipment* and thus halt the operation of work projected by the Army Officer in charge as has been stated.

"The deficiency was not that of the stevedore's gear and equipment, but of the tool or instrumentality owned by the Army, and contractually provided by it to perform a task, the details of which were by it, laid out and prescribed."

At p. 782 the Court added:

"(b) There is no testimony to support the second allegation quoted of failure on the part of American to fully perform its contractual duties because it did not reject hi-lo #25 which was duly issued to its employee plaintiff, in the face of his protest and request for such a crane equipped with a guard."

See also:

Hagans v. Farrell Lines, 237 F.2d 477, at pp. 479, 480, 482 (3d Cir. 1956).

At p. 482 the Court said:

"To the contrary, Farrell assumed an express obligation to furnish adequate winches in good order, and, as the evidence shows, to maintain and repair them."

And later added:

"Knowledge of an acquiescence in the existence of a defective appliance or condition may prevent the fruition of the right to indemnity. Restatement, Restitution, Sections 93 and 95, and Reporters' Notes. *But it does not necessarily follow that the burden to indemnify is thereby created.*" (Emphasis supplied)

Hagans supra, was followed in Smith v. Pan-Atlantic Steamship Corp. (3 Cir. 1958) 254 F.2d 600.

See finally: United States v. Harrison (9th Cir. 1957) 245 F.2d 911–916.

The third party complaint must be, therefore, dismissed.

Counsel for Third Party Defendant is directed to submit proposed Findings of Fact, Conclusions of Law and form of Judgment within a period of 15 days from the date of notice of this memorandum, serving copy thereof to counsel for Third Party Plaintiff who shall have a period of 10 days thereafter to submit amendments or objections thereto.