James THOMPSON

v.

TRENT MARITIME CO., Ltd.

v.

B. H. SOBELMAN & CO., Inc.

Civ. A. No. 27072.

United States District Court
E. D. Pennsylvania.

Oct. 4, 1963.

As Amended Oct. 10, 1963.

Freedman, Landy & Lorry, by Avram G. Adler, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, by Thomas F. Mount, Philadelphia, Pa., for Trent Maritime Co.

Francis E. Marshall, Philadelphia, Pa., for B. H. Sobelman & Co.

WOOD, District Judge.

James Thompson, a longshoreman, sustained fractures to his *right foot* while working in the wing of the S. S. Duke of Athens berthed at Pier 98, North, here at the Port of Philadelphia, on February 27, 1953. In addition to this injury, Mr. Thompson suffered a later unrelat-

ed injury to his *left leg* in 1957, which resulted in its amputation.

The *right foot* injury is the subject matter of the instant action. This injury occurred when a draft of several bales was being pulled from the forward port pocket aft, into the square of the hatch, when suddenly, a piece of dunnage coming from between the bales catapulted into the wing where Thompson and other longshoremen were standing. Thompson was injured about 2:00 p.m. and continued to work until 3:30 p.m. when the discharge operation was completed.

The jury rendered a verdict in favor of the plaintiff and against the defendant in the amount of $22,500 and found in favor of the third-party defendant in the indemnity action.

Post-trial motions have been filed by the defendant to set aside the judgments in favor of the plaintiff and the third-party defendant, and for new trials in each action.

### ORIGINAL ACTION

We conclude that the evidence supported a finding for the plaintiff and the only question to be considered is the amount of the verdict.

This plaintiff was a man of 43 years of age who worked alternately as a floor layer and longshoreman both before and after this accident. During the week following the injury he was treated for fractures of the second, third and fourth metatarsal bones; X-rays were taken, and a cast was applied. He was never hospitalized and his disability covered a period of approximately seven weeks from February 27 to April 20, 1953. At the end of his convalescence on April 20, 1953, the plaintiff returned to his long-shoreman's work and earned more at that job during the ensuing six months' period than at any time before or since. His average earnings were $70 per week. His loss of earnings, liberally calculated for his 51 days of disability, amounts to $560. His medical expense was $100.50. His total special damages amounted to $660.50. Measured in terms of these damages, the verdict is more than 35 times their amount.

As to pain and suffering, there is very little evidence of any substantial discomfort caused by this injury to the plaintiff. There was testimony by the plaintiff's physician who saw him for the first time on *June 14, 1955*, which was over two years after the accident, that pain was only a minor complaint (N.T. 105, 128). After he went back to work on April 20, 1953, less than two months after the injury, he never sought nor received any medical attention for his injury to his *right* foot. His only complaint was that he experienced some pain when he worked on an irregular surface. The severity of this pain is not expressed in the record.

As to future pain and suffering, there was some medical testimony that an arthritic condition developed in the area of the foot injury subsequent to 1953. The medical testimony was extremely modest as to whether this condition caused any pain at all and whether or not it was even a disabling injury. The speculative nature of this evidence was borne out by the plaintiff's continued ability to work at his usual tasks in the four years following the accident *before he lost his left leg in 1957*.

The plaintiff's earning power was not appreciably affected by this injury as can be readily seen from the following breakdown of his earnings:

| Year | Flooring | Stevedoring | Total |
|------|----------|-------------|-------|
| 1953 | $2,200.00 | $1,675.00 | $3,875.00 |
| 1954 | 2,720.00 | 964.00 | 3,684.00 |
| 1955 | 2,686.00 | None | 2,686.00 |
| 1956 | 3,616.00 | None | 3,616.00 |
| 1957 | 1,300.00 | 60 hours | 1,300.00 plus |

In fact, from the foregoing it will be seen that the plaintiff in the six months immediately following the accident did more stevedoring than he had ever done before the accident. It also appears that his earnings from hardwood flooring subsequent to the accident were comparable to his earnings in that work prior to the accident.

The only explanation for the enormous size of this verdict was the jury's failure to isolate the foot injury from the plaintiff's subsequent amputation of his left leg in 1957.

Even though the Court in its charge (N.T. 232), and counsel in their speeches to the jury admonished them not to consider the plaintiff's leg amputation in their deliberations, we feel that these warnings only focused the jury's attention on this disabling condition.

■ This Court can review a verdict only where it is so grossly excessive, as would shock our sense of justice. Boyle v. Ward, 39 F.Supp. 545, 548 (M.D.Pa. 1941).

> "All that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience." 15 Am.Jur. § 205, p. 622; Fornwalt v. Reading Co., 79 F.Supp. 921, 924 (E.D.Pa.1948).

■ After careful consideration of all the evidence in this case it is our considered judgment that the sum is grossly excessive and bears no proportion to the injury received or the damages sustained. We feel that a fair amount consistent with the injury and the damages

sustained would be $15,000. The defendant's motion for a new trial in the original action will be granted in the event that the plaintiff fails to remit all the damages above the sum of $15,000, in writing to the Clerk of the United States Court in and for the Eastern District of Pennsylvania within ten days from the service of our Order. Jacoby v. Johnson, 120 F. 487, 488 (3 Cir., 1903).

## THIRD-PARTY ACTION

The defendant, by this motion, asserts that our charge to the jury relative to the shipowner's right of indemnity from the stevedore was erroneous.

It was uncontroverted that dunnage from a previous stow, discharged at a prior port, was left strewn around the wings of the ship. This condition existed at 8:00 a.m. in the morning and continued throughout the day until the time of the accident at 2:00 p.m. When the stevedore arrived to start work on the morning of this accident, this condition was brought to the attention of the mate who ignored the notice and took no action to remove the dunnage. Thereupon the stevedore entered the ship and moved some of the dunnage at midships, and commenced working. None of the dunnage was removed from the wing where Thompson was injured later in the day.

■ In substance, the shipowner contends that even though an obvious unseaworthy condition exists, the stevedore is liable for indemnity, if it brings into play the unsafe condition in the course of doing its work. The asserted error is our failure to charge on this proposition of law, as requested, *in the language submitted by the shipowner*.[1]

1. The defendants' points for charge Nos. 4 and 6 read as follows:

"4. If you conclude from the evidence that the plaintiff's accident was caused by an unsafe working place, which was created or brought into play by the stevedore, through the negligence of its employees in performing the work, or in the failure to do that work in a safe and proper manner, or in the failure to exercise supervision or control of the work, the shipowner is entitled to recover from the stevedore all damages which you have awarded in the original action.

"6. If you find that plaintiff sustained injuries by reason of unseaworthy condition of the vessel, or the existence of an unsafe place to work, and if you find that B. H. Sobelman & Co., Inc., through its employees, had knowledge of the presence of this unseaworthy condition from approximately 8:00 o'clock in the morning

The defendant further argues that the Court was in error in not telling the jury that it constituted a breach of contract if they found that the stevedore continued to work under an obvious hazardous condition. Instead, the Court told the jury [2] that *if they did find that the work continued under a dangerous condition, the jury "could find"* that there was a breach of contract. It is asserted that this language allowed the jury to decide what constituted a breach of contract.

■ The defendant shipowner took no specific exception to the charge of the Court. Counsel only noted a formal exception to the Court's refusal to charge on his requested points Nos. 4 and 6 *in his own language*. We do not believe that the language proffered by the defendant correctly stated the law as it then and now exists. Also, the offered points did not conform to the facts of this case which clearly showed that the shipowner and not the stevedore had the duty to remove this dunnage from the previous stow. The fact that the stevedore continued to work under an unseaworthy condition created by the shipowner does not *pro tanto* breach its warranty of workmanlike service. Only where the stevedore negligently brings the unseaworthy condition into play in the performance of its service can it be held liable for indemnity. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 429, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

■ Defendant by its requested point No. 4 sought to have the jury charged that the unsafe working place was created by the stevedore which was contrary to the evidence as presented. Our charge properly instructed the jury that it was for their consideration whether or not the stevedore correctly performed its contract under the conditions created by the shipowner (N.T. 240–241).

In Crumady v. The Joachim Hendrik Fisser, supra, the stevedores were found to have moved the head of a boom in such a manner as to make the rigging unsafe beyond its known limits. The instant case showed no act of the stevedore in removing this cargo which caused the dunnage to get between the bales and subsequently injure the plaintiff. It is the defendant's bald conclusion that the continued performance by the stevedore of its contract under conditions admittedly created by the shipowner automatically breaches the warranty of the stevedore. Under this theory of the law, in order for the stevedore to prevail, it would have to refuse to work at all. Such a proposition was answered by *Judge Kirkpatrick in Smith v. Pan-Atlantic Steamship Corporation, D.C.,*

until the happening of the accident and did not correct the condition and continued to work under such conditions, then the shipowner is entitled to recovery from the stevedore of damages which you have awarded in the original action."

In support of these requests the shipowner cites: Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413 (1959).

2. The pertinent part of the charge is stated as follows:
" * * * You have heard evidence as to the location of the dunnage in the hold and the manner in which the drafts were removed at the time of the accident. In determining whether there is any liability for indemnity in favor of the ship against the stevedoring company, you may consider whether or not the stevedoring company through its employees continued to work there under hazardous conditions and whether they themselves, notwithstanding any fault on the part of the shipowner, permitted the work to be done in such a manner that it resulted in injuries to the plaintiff.

"In other words, did they continue to work in a place and under such circumstances, knowing it to be hazardous, and did these facts constitute a breach of their contract in which they warranted to do the work in a safe and workmanlike manner? If you find that they did, from all of the evidence, then you could find that they breached their contract and that the shipowner is entitled to indemnity, in which case on the second action you would find in favor of the shipowner and against the stevedoring company." (N.T. 240, 241)

161 F.Supp. 422, aff'd. per curiam by the United States Court of Appeals for the Third Circuit, 254 F.2d 600, when he stated at p. 423 of 161 F.Supp.:

"In the present case, the alleged default of the stevedore was not in breaching its contract but in carrying it out under conditions created by the shipowner. In substance, the shipowner argues that the stevedore should have stopped the work until the winch was fixed but, bearing in mind that the basis of indemnity is contractual, how can it be argued that the stevedore breached its contract with the ship by not refusing to go on with the equipment furnished by the ship? Is it part of a stevedoring contract that the stevedore will walk off the job if he finds the ship's equipment unsuitable? It may be negligent for him not to do so but it is in furtherance of his contract rather than a breach of it, and the shipowner could hardly hold him liable for trying to complete the work."

■ We feel that the charge of the Court was fair and followed substantially the approved instruction form as found in 28 F.R.D. 401. The defendant's claim that our charge was too restrictive is negated by our words set forth on pp. 239, 240:

" * * * and if you further find that the stevedoring company did not perform its obligations under the contract to discharge the cargo from the ship in a workmanlike manner and with reasonable safety to persons and property, and that such breach on the part of the stevedoring company caused any injuries the plaintiff sustained as a proximate result of the accident, then the shipowner is entitled to recover from the stevedoring company on the third-party complaint as damages for breach of contract any amount the shipowner may be required to pay the plaintiff in this case."

This portion of the charge "included the totality of the circumstances." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd. et al., 369 U.S. 355, 363, 82 S.Ct. 780, 785, 7 L.Ed.2d 798 (1962). The defendant's motions are denied.

### AMENDED ORDER

And Now, this 10th day of October, 1963, our Order of October 4, 1963 is amended to read as follows:

And Now, this 4th day of October, 1963, the defendant's motion for new trial in the original action will be granted as to the issue of damages only in the event that the plaintiff fails to remit all of the damages above the sum of $15,000, in writing to the Clerk of the United States Court in and for the Eastern District of Pennsylvania, within ten (10) days from the service of this Order.

It is further ordered that the defendant's motions to set aside the judgments in favor of the plaintiff and the third-party defendant are denied, and further that the motion for new trial as to the third-party defendant is denied.