PACIFIC FAR EAST LINE, Libelant,
v.
CALIFORNIA STEVEDORE & BAL-
LAST CO., Respondent.
No. 28271.

United States District Court
N. D. California, S. D.
March 9, 1965.

Dorr, Cooper & Hays, by W. K. Mordock, Jr., San Francisco, Cal., for libelant.

Barfield, Barfield & Dryden, by Robt. E. Dryden, San Francisco, Cal., for respondent.

SWEIGERT, District Judge.

This is a suit by Pacific Far East Line, Inc., owner of the SS Korean Bear, against California Stevedore & Ballast Company, a stevedore company, to recover indemnity from the latter. The case was tried to the Court upon a partial stipulation of facts and the presentation of certain evidence, oral and documentary.

On the evening of October 5, 1957, the SS Korean Bear was moored at the Alameda Cold Storage Plant at Alameda, California. Respondent California Stevedore & Ballast Company, an independent stevedoring contractor, employed by the Department of Defense of the United States of America pursuant to written contract, was engaged in loading cargo on board the said vessel. Among its employees was Sherwood Sylvia, a gang boss, who, together with his gang, was employed in loading cargo into the No. 5 hatch.

Sylvia, having been injured by a fall caused by oil leakage on the deck passageway, filed an action against Pacific Far East Line, Inc., which was compromised. Thereafter, this suit was brought by Pacific Far East Line, Inc., to recover indemnity from California Stevedore & Ballast Company.

The reasonableness of the settlement figure, counsel fees and expenses incurred in defending the claim of Sherwood Sylvia has been stipulated.

Noting that the stevedore company was under contract, not with the shipowner, but with the U. S. Department of Defense, we conclude that indemnity may be awarded, nevertheless, to the shipowner if the facts otherwise support libelant's claim.

A shipowner is entitled to indemnity even where there is no privity of contract between the stevedore and the shipowner. The warranty of workmanlike performance, arising when the stevedore goes aboard a ship to perform stevedoring service, runs, not only to his direct contractor, but also to the shipowner, who is deemed in law to be a third party beneficiary of the stevedore's warranty. Waterman Steamship Corporation v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

It is not necessary that there be an express indemnity contract. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). An obligation to render workmanlike service is the essence of the stevedoring contract. Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); American President Lines v. Marine Terminals Corporation, 234 F.2d 753 (9th Cir. 1956).

The main question in the pending case is whether respondent stevedoring company breached its warranty of workmanlike service.

Libelant contends that respondent stevedoring company breached its warranty by continuing to work its stevedoring crew under an unsafe, unseaworthy condition aboard a ship of which condition the respondent had knowledge.

The partial stipulation of facts upon which this contention is based is as follows:

The oil in which Sylvia slipped came from drums of lube oil loaded a short time prior to 7:00 p. m., on October 5, 1957 when Sylvia and the other longshoremen came to work aboard the Korean Bear. The drums were not loaded by California Stevedore & Ballast Company.

Roxie Gianatasio was the walking boss aboard the ship and employed by California Stevedore & Ballast Company. Earl C. Buffler was the shore walking boss employed by California Stevedore & Ballast Company. These two men were the top men in charge of loading cargo on board the Korean Bear at the time in question. Sherwood Sylvia was a gang boss in charge of the gang working at the forward end at No. 5 hatch directly aft the ship's house on board the Korean Bear on the night in question.

Oil, leaking from the drums referred to, was discovered by Gianatasio and Buffler, and a mate aboard the ship was notified by them at about 7:00 p. m., October 5, 1957, when the longshoremen boarded the vessel. Thereafter, at between 9:00 and 11:00 p. m., Gianatasio and Sylvia notified a ship's mate of the continued presence of oil on deck leaking from the drums above referred to.

Sylvia left the No. 5 hatch to go ashore on the starboard outside passageway of the Korean Bear, and fell in the oil, injuring himself, sometime between 1:30 and 2:00 o'clock a. m., on the morning of October 6, 1957.

The stevedores stopped work at 2:10 p. m., on October 6, (after this accident) by reason of the presence of the oil above referred to, which fact is noted in the deck log of the Korean Bear for that date.

This work stoppage was ordered by the business agent of the ILWU, Local 10. The oil was cleaned up by ship's personnel and work resumed at 3:00 p. m., October 6, 1957.

Sometime thereafter a dispute arose as to the right of the longshoremen to payment for the time they were aboard the vessel between 2:10 and 3:00 p. m., on October 6, 1957, while work was stopped.

\* \* \*

Evidence taken by the Court showed, and the Court finds, that the electric lighting conditions at the point of Sylvia's injury were substantially the same at the time of Sylvia's injury, 1:30 to 2:30 a. m., as they were when he earlier (at 9:00 p. m.) observed them; that the lighting conditions were reasonably adequate and not unseaworthy. The only unseaworthy condition, therefore, was the oil leakage on the deck passageway.

[5] The great weight of authority allows a shipowner to recover indemnity from a stevedore company which proceeds to work its crew under an unsafe, unseaworthy condition of which the stevedore company has knowledge. The reasoning is that such conduct of the stevedore company brings the unseaworthiness of the ship into play and amounts to a breach of the stevedore's warranty of workmanlike service. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). See, in this Circuit: United States v. Arrow Stevedoring Co., 175 F.2d 329 (9th Cir. 1949); United States v. Rothschild International Stevedoring Co., 183 F.2d 181 (9th Cir. 1950); American President Lines v. Marine Terminals Corporation, 234 F.2d 753 (9th Cir. 1956); Hugev v. Dampskisaktieselskabet International, 170 F.Supp. 601 (S.D.Cal.1959), affirmed, 274 F.2d 875 (9th Cir. 1960).[1]

1. The cases in the Second and Fourth Circuits are to the same effect: Berti v. Compagnie De Navigation Cyprien Fabre, 213 F.2d 397 (2d Cir. 1954); Parenzan v. Iino Kaiun Kabushiki Kaisya, 251 F.2d 928 (2d Cir. 1958); Calmar Steamship Corp v. Nacirema Operating Co., 266 F.2d 79 (4th Cir. 1959); American

Export Lines, Inc. v. Revel, 266 F.2d 82 (4th Cir. 1959); Santomarco v. United States, 277 F.2d 255 (2d Cir. 1960); Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176 (4th Cir. 1960); DeGioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962); Pettus v. Grace Line, Inc., 305 F.2d 151 (2d Cir. 1962); Drago

■ Merely calling the attention of the ship's officers to the unseaworthy condition is not sufficient to excuse the stevedore's actions in proceeding to work such an unsafe, unseaworthy area. Simpson v. Royal Rotterdam Lloyd, 225 F. Supp. 947 (S.D.N.Y.1964).

A contrary view has been expressed in the Third Circuit: See: Hagans v. Farrell Lines, Inc., 237 F.2d 477 (3d Cir. 1956), and Smith v. Pan-Atlantic Steamship Corporation, 254 F.2d 600 (3d Cir. 1958) affirming 161 F.Supp. 422 (E.D.Pa. 1957). But see dissent of J. Biggs on petition for rehearing in Hagans, supra, at p. 483 and in Hodgson v. Lloyd Brasileiro Patrimonio Nacional, 294 F.2d 32 (3d Cir. 1961) at p. 36.

■ We are of the opinion that the majority rule is preferable because it furthers the primary consideration of avoidance of accidents. The possibility of indemnity over against it by the shipowner will cause a stevedore company to hesitate before risking its crew in an unsafe, unseaworthy condition—as it might do if it could do so with impunity. Presumably, a shipowner, even one whose ship in some respect subjects it to an absolute liability for unseaworthiness, would prefer that work be stopped rather than the condition be "brought into play" by the stevedore company to the injury of a worker. The stevedore company's warranty of proper workmanship is broad enough to imply that it will not proceed in the face of a known, dangerous condition. Its clear obligation is to either remedy the condition, or have the ship remedy it or, if necessary, refuse to subject workers to the risk of injury—an obligation analogous to the obligation to exercise the "last clear chance" as recognized by the law of torts.

■ It has been properly recognized, however, that indemnity should be denied when the shipowner participates in some way in the decision to work an unsafe, unseaworthy area, for example, by misleading the stevedore company into believing that the condition has been repaired, Torres Cruz v. Hudson Steamship Co., 206 F.Supp. 216 (D. Puerto Rico 1962), affirmed 314 F.2d 44 (1st Cir. 1963), or that it is actually safe, Moore-McCormack Lines, Inc. v. Maryland-Ship Ceiling Co., 311 F.2d 663 (4th Cir. 1962), or by otherwise inducing the stevedore. to go on with the work, United States v. Harrison, 245 F.2d 911 (9th Cir. 1957).

■ Of course, when the stevedore company is not aware of the unseaworthy condition and cannot reasonably be expected to discover it, the rule becomes inapplicable and, absent unworkmanlike performance in some other respect, the stevedore company cannot be held. Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., 308 F.2d 120 (5th Cir. 1962); Ray v. Compania Naviera Continental, 203 F.Supp. 206 (D.Md. 1962); Thompson v. Trent Maritime Co., 222 F.Supp. 221 (E.D.Pa.1963); Wujek v. Compania Sud Americana De Vapores, 224 F.Supp. 853 (D.Md.1964). Cf. Nicroli v. Den Norske Afrika-Og Australie-linie, etc., supra, footnote.

■ We have considered whether the record for the pending case shows not only knowledge of an unseaworthy condition of the deck passageway, but also whether such knowledge came to stevedore supervisory personnel having authority to decide one way or the other on continuance of the work; also whether the knowledge was such as to indicate a condition that would affect and endanger the stevedore crew in its work in hatch No. 5.

It clearly appears that Sylvia's stevedore bosses felt the condition sufficiently dangerous that they twice notified the ship's officers of it before the accident. This is further shown by the fact that the stevedore crew did cease work after the

v. A/S Inger, 305 F.2d 139 (2d Cir. 1962); Tedeschi v. Luckenbach Steamship Co., 324 F.2d 628 (2d Cir. 1963); Misurella v. Isthmian Lines, Inc., 328 F. 2d 40 (2d Cir. 1964); Nicroli v. Den Norske Afrika-Og Australielinie, etc., 332 F.2d 651 (2d Cir. 1964); and Smith v. United States, 336 F.2d 165 (4th Cir. 1964).

accident until the condition was corrected.

The Court therefore concludes that respondent California Stevedore & Ballast Co., must indemnify libelant Pacific Far East Line, for the loss occasioned by satisfaction of the claim of Sherwood Sylvia.

The prevailing party will prepare findings of fact and conclusions of law in accordance with this memorandum, serve them upon the opposing party and lodge them with the Court in accordance with the local Rules.