# WEYERHAEUSER STEAMSHIP CO. *v.* NACIREMA OPERATING CO., INC.

No. 75.   Argued January 6, 1958.—Decided March 3, 1958.

*William Garth Symmers* argued the cause for petitioner. With him on the brief were *Frederick Fish* and *William Warner.*

*Leavenworth Colby* argued the cause for the United States, as *amicus curiae,* urging reversal. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Doub, Paul A. Sweeney* and *Herman Marcuse.*

*Patrick E. Gibbons* argued the cause for respondent. With him on the brief was *Oscar A. Thompson.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The question here involves the right to trial by jury under principles of maritime liability enunciated in *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.,* 350 U. S. 124 (1956). Respondent, a stevedoring company, contracted to furnish petitioner, a shipowner, with stevedoring services, and a longshoreman employed by respondent was injured while unloading petitioner's vessel. When the longshoreman sued petitioner on claims of negligence and unseaworthiness, petitioner impleaded respondent, claiming a right to indemnity for any damages the longshoreman might recover. The main case, involving the longshoreman's claims, was submitted to the jury, which found for the longshoreman on the issue of negligence and for petitioner on the issue of seaworthiness. That judgment has since been satisfied and is not before us. After receiving the verdict, the judge decided that it also was dispositive of the third-party action, and directed a

verdict for respondent. A divided Court of Appeals affirmed, 236 F. 2d 848, and we granted certiorari. 352 U. S. 1030 (1957). Petitioner contends, *inter alia,* that certain issues of fact should have been submitted to the jury. We agree with petitioner on this point.

Petitioner's claim for indemnity primarily rests on the contractual relationship between it and respondent. While the stevedoring contract contained no express indemnity clause,[1] it obligated respondent "to faithfully furnish such stevedoring services as may be required," and to provide all necessary labor and supervision for "the proper and efficient conduct of the work." As this Court said in *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp., supra,* such language constitutes "a contractual undertaking to [perform] 'with reasonable safety,' " 350 U. S., at 130, and to discharge "foreseeable damages resulting to the shipowner from the contractor's improper performance." 350 U. S., at 129, footnote 3. Petitioner contends that a breach of this undertaking by respondent caused the injury to the longshoreman, and that petitioner's liability resulting from the breach was "foreseeable."

The *F. E. Weyerhaeuser,* the vessel upon which the accident occurred, had sailed from the West Coast with a cargo of lumber for New York and Boston, the ports where respondent was to perform the stevedoring operations. The vessel arrived in New York on January 25, 1952, and in the ensuing five days the deck load and part of the underdeck cargo was discharged. On January 30 the ship left New York, arriving in Boston the next day. Respondent's crews boarded the vessel and the unloading continued. On the fifth day of the Boston operations one Connolly, a longshoreman employed by respondent,

---

[1] See, generally, Weinstock, The Employer's Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, 103 U. of Pa. L. Rev. 321, 332–346 (1954).

was injured when struck on the head by a piece of wood while working in a lower hold. The parties agree that the wood must have fallen into the hold from the top of a temporary winch shelter which protected the winch drivers from the elements.

The evidence indicated that winch shelters are customarily erected by longshoremen at the beginning of their unloading operations. They consist of a scrap lumber framework with a tarpaulin stretched across the top. Because of their flimsy construction they are considered a hazard in the winds at sea, and "automatically" are torn down by the ship's crew when the vessel leaves port. Both the captain and the second officer of the *F. E. Weyerhaeuser* testified that it would be carelessness on their part to allow winch shelters to remain in place when the vessel goes to sea. We need not discuss the details which may have led the jury to find for Connolly in the main case, but implicit in the jury verdict was a finding that the structure was on the ship when it arrived in Boston.[2] Respondent, through its employees stationed in New York, must have built the shelter while the ship was in New York harbor,[3] and we may assume that petitioner failed to remove it upon leaving for Boston. The record is silent as to the exact circumstances under which it was made available to respondent in Boston. It does appear, however, that the shelter was

---

[2] The jury found for Connolly on the issue of negligence after being instructed as follows:

"Now, if you find from the evidence that the structure, that is, this shelter, was on the ship when it came into Boston Harbor and that the ship offered it to the stevedores to use and work with, and if you find that in permitting that to be there the ship was guilty of some act of negligence as I have defined it to you, then you could find a verdict for Mr. Connolly."

[3] There was undisputed evidence that the shelter could not have been assembled prior to the removal of the deck cargo in New York.

used in the stevedoring operations by respondent's Boston employees, in spite of the fact that respondent as well as petitioner must have known of its journey from New York and the possible effect of such a journey on an already flimsy structure. There was evidence that the shelter was not inspected by either party until the injury to Connolly five days after the arrival in Boston.[4]

We believe that respondent's contractual obligation to perform its duties with reasonable safety related not only to the handling of cargo, as in *Ryan,* but also to the use of equipment incidental thereto, such as the winch shelter involved here. *American President Lines* v. *Marine Terminals Corp.,* 234 F. 2d 753, 758; *United States* v. *Arrow Stevedoring Co.,* 175 F. 2d 329, 331. If in that regard respondent rendered a substandard performance[5] which led to foreseeable liability of petitioner, the latter was entitled to indemnity absent conduct on its part sufficient to preclude recovery. The evidence bearing on these issues—petitioner's action in making the shelter on its ship available to respondent's employees in Boston although it apparently was unsafe,[6] as well as respondent's continued use of the shelter for five days thereafter without inspection—was for jury consideration under appropriate instructions. These issues were not encompassed by the instructions in the main case, where the test of

---

[4] A witness testified that after the accident he stood on one of the winches to permit a view of the shelter top, which was approximately seven feet above the deck, and discovered a second piece of tarpaulin secured only by two loose pieces of wood similar to that which struck Connolly.

[5] It should be noted that "[t]he shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp., supra,* at 134.

[6] See Corbin, Contracts, §§ 571, 947, 1264; cf. Restatement, Contracts, §§ 295, 315.

petitioner's liability was based on failure to perform a nondelegable duty to Connolly. Since the liability of respondent depended on different principles, *Crawford* v. *Pope & Talbot, Inc.,* 206 F. 2d 784, 792, all fact issues involved in the third-party action should have been submitted to the jury after the verdict in the main case.[7] Further, the verdict for Connolly did not *ipso facto* preclude recovery of indemnity by petitioner, for as we have indicated, the duties owing from petitioner to Connolly were not identical with those from petitioner to respondent. While the jury found petitioner "guilty of some act of negligence," that ultimate finding might have been predicated, *inter alia,* on a failure of petitioner to remove the shelter when the ship left New York, or a failure to correct or warn respondent of a latent dangerous condition known to petitioner when respondent began the Boston unloading. Likewise, the finding might have been predicated on a failure of petitioner during the five days in Boston to inspect the shelter, detect and correct the unsafe condition. Although any of these possibilities could provide Connolly a basis of recovery, at least the latter would not, under *Ryan,* prevent recovery by petitioner in the third-party action. 350 U. S., at 134–135. See *Cornec* v. *Baltimore & O. R. Co.,* 48 F. 2d 497, 502; *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232, 59 N. E. 657 (opinion of Chief Justice Holmes). It

---

[7] The following explanation in the charge to the jury suggests that the trial judge intended to submit the third-party action upon return of the verdict in the main case:

"I shall ask you to go out and consider the claims of Mr. Connolly against the Weyerhaeuser Steamship Company first and then when you come back with your verdict on that I shall ask you to retire again and consider the issues in the second suit, namely Weyerhaeuser Steamship Company against the Nacirema Operating Company, and before I submit that second one to you I shall give you some instructions which apply peculiarly to that."

was improper, therefore, for the court to direct a verdict for respondent based on the finding for Connolly.

In view of the new trial to which petitioner is entitled, we believe sound judicial administration requires us to point out that in the area of contractual indemnity an application of the theories of "active" or "passive" as well as "primary" or "secondary" negligence is inappropriate. *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Co., supra,* at 132–133.

The judgment of the Court of Appeals is reversed and the case is remanded for proceedings in conformity with this opinion.

*It is so ordered.*