SCHIAVONE TERMINAL, INC., Third-Party Defendant, Appellant,

v.

Comm. Guiseppe BOZZO, Third-Party Plaintiff, Appellee.

Comm. Guiseppe BOZZO, Defendant, Appellant,

v.

Edward J. NEAREN, Plaintiff, Appellee.

Nos. 5733, 5734.

United States Court of Appeals
First Circuit.

May 4, 1961.

Paul R. Frederick, Boston, Mass., with whom Peter D. Cole and Badger, Parrish, Sullivan & Frederick, Boston, Mass., were on brief, for Schiavone Terminal, Inc.

Leo F. Glynn, Boston, Mass., for Comm. Guiseppe Bozzo.

Nathan Greenberg, Boston, Mass., for Edward J. Nearen, appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

These are two appeals from a judgment of the United States District Court for the District of Massachusetts entered June 2, 1960 in accord with a special verdict returned by the jury. The judgment ordered that the plaintiff, Edward J. Nearen, recover $5,604.43 plus costs from the defendant, Comm. Guiseppe Bozzo, and that Bozzo, the third party plaintiff, recover from the third party defendant, Schiavone Terminal, Inc., such part of the above judgment in favor of Nearen as Bozzo has paid or may pay hereafter. Bozzo had filed motions for a directed verdict and for judgment notwithstanding the verdict. Schiavone had filed similar motions. All these motions were denied. The question presented by each of these appeals is whether the denial of these motions was error.

The following is a brief summary of the facts concerning Nearen's injury. Nearen was an experienced longshoreman employed by Schiavone to work as a winchman in the loading of scrap metal on the vessel, Bacicin, owned by Bozzo. On the night of February 2, 1958 Nearen was engaged in the operation of loading the No. 2 hatch with scrap. A magnet on a shore crane was used to pick up the scrap from freight cars. The crane then swung in an arc to a point over the No. 2 hatch where the power of the magnet was cut off and the scrap dropped into the hold. At the time of the accident, about 9:30 p. m., Nearen was standing on the inshore side of the No. 2 hatch next to O'Brien, the foreman of the stevedore gang. Nearen was looking aft towards the No. 2 hatch and was watching the magnet. He saw nothing coming towards him and did not know what actually happened. O'Brien heard a noise and Nearen fell to the deck. O'Brien later found a piece of metal with ice in it on the deck about 15 feet from where Nearen had been standing. The piece of metal, together with the ice, weighed about 10 pounds and had on it a white mark. Nearen wore a white plastic helmet at the time of his injury.

Nearen contended that the vessel was unseaworthy because of inadequate lighting. On commencing the night loading operations several nights before that of Nearen's injury, the longshoremen had asked one of the vessel's crew for lights and subsequently a cluster of lights was hung on the mast about 15 feet above the deck. Two lights on the crosstree of the mast were without bulbs for the whole period. It was customary to have these crosstree lights operating in order to provide illumination for the deck and the hatch. The lighting of the area had been the same for three or four nights preceding the time of Nearen's injury O'Brien, Schiavone's foreman, testified that the cluster light on the mast did not provide much illumination because there were only small bulbs in it.

We shall consider first the denial of the motions for judgment in favor of defendant, Bozzo, on Nearen's claim against it. Bozzo contends that Nearen did not present sufficient evidence that inadequate lighting caused his injuries to warrant a jury verdict in his favor. Bozzo's contention is premised on its conclusion that Nearen was struck behind the right ear. But the record does not support such a conclusion; certainly, it does not require the jury to interpret all of the evidence only on that premise.

Dr. MacDonald, on cross-examination, testified:

"XQ. Dr. MacDonald, can you indicate where this man's injury occurred on his head on your own person? A. Excuse me, please. [The witness refers to the hospital record.]

"XQ. I call your attention to this here about contusion and abrasion, in the hospital record, to the right ear and right mastoid region? A. Yes.

"XQ. Can you indicate where that is? A. If I put the base of my hand over my ear, this protuberance here, it would cover this area.

"The Court: Your hand covers more than that at the moment, doesn't it?

"The Witness: I said the base of it.

"The Court: Suppose you used your finger to point it out?

"The Witness: All right. You have to—it says 'laceration of the ear'—the protuberance behind the ear is the mastoid [indicating].

"XQ. Thank you, Doctor. A. That covers about the size of a 50-cent piece or larger. * * *"

Dr. MacDonald, in our view, merely pointed out an injured area that was suggested by defendant's counsel. He did not testify that the point of impact by the piece of metal was behind Nearen's right ear. Since we do not believe that the jury was required to find on the basis of the doctor's testimony that the piece of scrap metal hit Nearen behind his right ear, we think that all of defendant's theorizing that it was impossible for the lighting to cause the injury is in vain, since it is based on such a premise.

We believe that the jury would be warranted in finding that (1) the piece of scrap metal struck Nearen on his helmet, (2) the helmet or the fall to the deck caused the lacerations and bruises in the region of the right ear, (3) Nearen was looking toward the loading operation, and (4) the inadequate lighting was a cause of the injury. The court did not err in denying Bozzo's motions.[1]

The remaining question is whether the district court erred in denying Schiavone's motions for directed verdict and for judgment n.o.v. The right of a shipowner to be indemnified by the stevedoring company for amounts paid longshoremen as a consequence of injury suffered on account of the vessel's unseaworthiness or negligence has been spelled out by the courts in many cases in recent years. See, e.g., Waterman S.S. Corp. v. Dugan & McNamara, 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169; Crumady v. The Joachim Hendrick Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 1960, 278 F.2d 176; American Export Lines, Inc. v. Revel, 4 Cir., 1959, 266 F.2d 82; Shannon v. United States, 2 Cir., 1956, 235 F.2d 457; American President Lines v. Marine Terminals Corp., 9 Cir., 234 F.2d 753, certiorari denied 1956, 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161. Under the principles set forth in these cases we believe that Bozzo was entitled to have the jury decide the question of indemnification. The Supreme Court held in Crumady that the mere supplying of defective equipment did not bar indemnification from the stevedoring company. The Court in that

1. Nearen contends that Schiavone, the third-party defendant, did not file an answer to his claim against the defendant, Bozzo, and therefore Schiavone should not be allowed on appeal to press any argument against the sufficiency of Nearen's evidence in support of his claim. We do not find it necessary to decide this point since Schiavone made no argument that differed essentially from those made by defendant, Bozzo, and found to be without merit. See, however, Moore, Federal Practice ¶ 14.19 (1948).

opinion also indicated that the indemnity might be owed by the stevedoring company because of the stevedoring company's negligence which brings the vessel's unseaworthiness "into play." Such action by the stevedoring company could amount to a breach of the warranty of workmanlike service. Under this decision especially, we believe that the district court was correct in denying Schiavone's motions. See also Waterman S.S. Corp. v. Dugan & McNamara, supra, 364 U.S. at page 423, 81 S.Ct. at page 201. But see Hagans v. Farrell Lines, 3 Cir., 1956, 237 F.2d 477.

Judgment will be entered affirming the judgment of the district court.