Albert H. WATKINS, Plaintiff,

v.

FARRELL LINES INCORPORATED, Defendant and Third Party Plaintiff-Appellant,

v.

STATES MARINE CORPORATION OF DELAWARE, Third Party Defendant-Appellee.

No. 279, Docket 27849.

United States Court of Appeals Second Circuit.

Argued March 13, 1963.

Decided April 1, 1963.

Robert A. Lilly, New York City (Stapleton, Flynn & Lilly, John J. Purcell, New York City, of counsel), for appellant.

Yorkston W. Grist, Grist, Cannata & Launer, New York City (Seymour Launer, New York City, of counsel), for third party defendant-appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

Watkins, a seaman on the SS. African Patriot, brought this action under the Jones Act, 46 U.S.C. § 688, against Farrell Lines, Inc., the vessel's owner and operator, to recover for injuries he sustained while endeavoring to resecure deck cargo in a heavy sea on the mid-Pacific. Farrell, having impleaded States Marine Corp. of Delaware, the vessel's time-charterer, settled with Watkins for $33,188.10, for which it sought indemnity from States Marine. This claim was tried to Judge MacMahon in the Southern District of New York, who dismissed it pursuant to an opinion; Farrell appeals.

The cargo that became loose was one of a number of railroad truck assemblies. These had originally been loaded at a Gulf port by States Marine and stowed below deck. While the African Patriot was at the Oakland Army Base in California, States Marine decided to have them reloaded on the forward deck for the voyage across the Pacific to Korea. The reloading was done, under the charterer's supervision and at its expense, by the stevedoring company employed at the Army Base. Pear-links and other gear were used to lash the assemblies on the deck. States Marine furnished a box containing forty-eight new pear-links; the ship also had a supply, which the charter entitled States Marine to use. Thirty-six pear-links were utilized in lashing the deck cargo at Oakland; another twenty-four were added at sea, some before and a few after the incident that led to Watkins' injury. This took place when the breaking of a pear-link affixed at Oakland caused one of the assemblies to become loose; it was in the course of an effort to resecure it that Watkins was injured.

There was no evidence that the defect in the pear-link was discoverable by States Marine or its stevedore at the time of the loading; to the contrary, the record is replete with testimony that the lashings were constantly inspected and tested during the Pacific crossing and, up to the morning of the accident, were found in good order. We have been cited to no authority that, and we see no reason why, a charterer's duty "to load, stow, trim and discharge the cargo", as the charter here provided, should go so far as to render it liable if ship's gear used in making the stow contains a defect of which the charterer or its stevedores neither knew nor should have known; language in this Court's opinion in Shannon v. United States, 235 F.2d 457 (2 Cir., 1956), dealing with a stevedore, would imply the contrary. Under what circumstances, if any, such a charterer would be liable for a defect not discoverable by due diligence in gear furnished by itself or its stevedores, we need not here determine.[1] For the judge found that Farrell had not sustained its burden of showing that the pear-link that parted had come from the supply furnished by States Marine rather than that carried by the ship. This is a finding of "fact" which the "unless clearly erroneous" rule of F.R.Civ.Proc. 52(a), see also McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954), prevents us from overturning on the record here. There is thus no occasion for us to decide the interesting question as to the extent of a charterer's liability mooted above. Neither do we need to pass on the judge's alternative ground of decision, relating to what he found to be negligence by Farrell in exposing Watkins to undue risk on the day of the injury, beyond saying that we cannot agree with his conclusion that this prevented the defective pear-link from being a proximate cause of the accident. See American Law Institute, Restatement of Torts, Second, Tentative Draft No. 7, § 442B. Whether such negligence would constitute "conduct on its [the ship's] part sufficient to preclude recovery", Weyerhaeuser SS. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958), cf. Williams v. Pennsylvania R. Co., 313 F.2d 203, 213–214 (2 Cir., 1963), in a context where, in contrast to the usual stevedoring case, the ship's negligence came later in the causal chain, is another matter.

Affirmed.

---

[1] In Booth SS. Co. v. Meier & Oelhaf Co., 262 F.2d 310, 313 (2 Cir., 1958), we held that a contractor who undertook to do repair work on a vessel and to supply equipment essential to that end would be liable for loss "resulting from the presence of defective equipment which the contractor supplied without fault." The answer to the question put in the text might depend on whether the charterer was furnishing equipment required of it by the charter or was performing an obligation which the charter imposed on the ship—an issue disputed here.