342 F.2d 627
 Leonard AMMESMAKI, Plaintiff,
v.
The INTERLAKE STEAMSHIP COMPANY, Defendant and Third-Party Plaintiff,
v.
CHICAGO & NORTH WESTERN RAILWAY COMPANY, Third-Party Defendant.
INTERLAKE STEAMSHIP COMPANY, Defendant and Third-Party Plaintiff-Appellant (Appellee),
v.
CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Third-Party Defendant-Appellee (Appellant).
 No. 14676.
 No. 14677.
 United States Court of Appeals Seventh Circuit.
 February 12, 1965.
 Rehearing Denied in No. 14676 March 29, 1965.
 
 Robert L. Hesse, Chicago, Ill., Robert G. McCreary, Jr., Cleveland, Ohio, Stevenson, Conaghan, Hackbert, Rooks & Pitts, Chicago, Ill., and Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for third-party plaintiff and appellant.
 Lyle B. Overson, Chicago, Ill., Robert W. Russell, James P. Daley, Chicago Ill., for third-party defendant-appellee, cross-appellant.
 Before SCHNACKENBERG, CASTLE, and SWYGERT, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 This case concerns a maritime accident. Plaintiff Leonard Ammesmaki, a seaman on the steamship Crete, brought a diversity action for personal injury against The Interlake Steamship Company, his employer, and the Chicago & North Western Railway Company, the owner of the dock where the accident occurred. The action against North Western was dismissed upon discovery that diversity was lacking between the railroad and plaintiff. Thereupon, Interlake sought indemnity by interpleading the railroad as a defendant in a third party action.
 
 
 2
 Plaintiff based his claim on the ship-owner's negligence, the unseaworthiness of the vessel, and Interlake's liability for maintenance and cure. This claim and the third party indemnity action were submitted to a jury in a single trial. Ammesmaki was awarded damages in the sum of $54,357.75. By separate verdict in the third party action Interlake was given damages against North Western in the sum of $11,958.70. Judgments were entered on the verdicts; thereupon Interlake and North Western filed motions n. o. v. The motions were denied and both parties have appealed.
 
 
 3
 North Western operated an iron ore dock on a bay of Lake Michigan at Escanaba, Michigan. Interlake owned the vessels Crete and Verona. During the last part of November, 1956, these ships were at the dock loading cargoes of ore. To board the Crete from the dock, seamen were required to travel a stairway inside the dock structure and then onto a fender which led to a boarding ladder on the side of the Verona. From that vessel they crossed over to the Crete which was tied up to her sister ship. At the time of the accident giving rise to this suit, water had dripped off the dock superstructure and formed ice on the fender. Ammesmaki had gone ashore during the evening of November 29. While he was returning to the Crete, he slipped and fell on the icy fender. He was rendered unconscious and taken to a hospital.
 
 
 4
 At the trial Interlake maintained that the icy condition of the railroad's dock was the cause of Ammesmaki's fall. The railroad, on the other hand, claimed that the fault lay with the Verona's master in failing to place the ship's boarding ladder adjacent to the stairway. North Western argued that if the ladder had been properly located, plaintiff would not have been required to walk on the fender.
 
 
 5
 Interlake contends that the jury did not obey the trial court's instruction that if the jury found against North Western in the third party action, it should award to Interlake damages in the same amount that the jury awarded Ammesmaki. Error is claimed in the district court's refusal to correct the verdict against North Western by increasing the amount of damages from $11,958.70 to $54,357.75.
 
 
 6
 As authority for its position, Interlake cites Horton v. Moore-McCormack Lines, Inc., 326 F.2d 104 (2d Cir. 1964). There, a seaman, Horton, sued his employer for injury caused by an assault by a fellow seaman, Rivera. The action against Moore-McCormack was based upon unseaworthiness and negligence "in hiring Rivera, in laxity of discipline which permitted this attack on Horton and in failing to halt that attack." Moore-McCormack filed a third party action against Rivera for indemnity based on his "implied agreement * * * to perform his duties in a proper and seamanlike manner." The jury awarded the plaintiff $80,000 as damages against Moore-McCormack, but in the third party action awarded only $4,300 as damages against Rivera. On appeal, the Second Circuit remanded the third party action with direction to enter judgment for Moore-McCormack against Rivera in the amount of $80,000, saying: "It is within our power as an appellate court to correct the verdict * * * and it is our duty to do so." The court ruled that the jury should have been instructed that it must find for Moore-McCormack in the same amount which it found for Horton against Moore-McCormack, explaining: "The liability of Moore-McCormack to Horton is based wholly upon the injuries inflicted on Horton by Rivera. There is no evidence which would support any liability of Moore-McCormack which does not arise from Rivera's attack on Horton. * * *"
 
 
 7
 We think there is a clear distinction between the Horton case and the one before us. The court in Horton held that it was Rivera's conduct that rendered his employer, the shipowner, liable; the respective bases of liability were thus identical. In the instant case, the instructions, as well as the parties' contentions, show that the bases of liability were not identical, that is, that the conduct alleged against Interlake as the cause of Ammesmaki's injury was not the same conduct asserted against North Western in the third party action.
 
 
 8
 Interlake predicated its action for indemnity on alternative theories of tort and contract. The district judge gave instructions outlining both. Under the tort theory the factual issues submitted to the jury included whether Interlake was negligent in providing for the safety of its employees, whether North Western was negligent in the maintenance of its dock, and whether the latter's negligence was the sole proximate cause of Ammesmaki's injury. Under the contract theory additional factual issues were submitted to the jury. These included whether the railroad expressly or impliedly had agreed to keep its dock in a reasonably safe condition and whether such breach was the sole proximate cause of the accident. In explaining the contract theory, the judge told the jury that if a breach of contract was the sole proximate cause of Interlake's becoming liable to plaintiff, "then you are directed to return a verdict of guilty against said railway company in the amount of the damages, if any, which by your verdict, if any, you have awarded to the plaintiff."
 
 
 9
 Thus, the jury was told twice that the railroad could be held liable only if its conduct was the sole cause of the accident. It follows that only if the damages assessed against North Western had been in the same amount awarded Ammesmaki could it be said with assurance that the jury found the cause of the occurrence resided solely in the railroad's conduct. By lessening the damages against North Western the jury obviously intended to hold Interlake at least partially responsible for Ammesmaki's injury. The only rational explanation for the disparity in the verdicts is that both the shipowner and the dockowner were found guilty of conduct contributing to cause plaintiff's injury.
 
 
 10
 Neither a district court nor a court of appeals is warranted in substituting findings for those intended by a jury when, as here, the factual issues of liability were not identical in the two actions and were sharply disputed. In these circumstances, the functions of the jury must not be usurped by the court. Otherwise, litigants would be denied their right to trial by jury guaranteed by the seventh amendment to the Constitution. Accordingly, Interlake was not entitled to its request that the verdict be corrected.
 
 
 11
 Independently of other questions on this appeal, Interlake contends that it was denied a fair trial upon the issue of reasonable attorneys' fees and costs incurred in the defense of the main action. Although a proper incident of its claim for indemnity, Interlake argues that this issue could not be tried at the same time as the other issues in the case and therefore should have been separated under Fed.R.Civ.P. 42(b).
 
 
 12
 The record shows that it was not until the trial was in progress that, pursuant to rule 42(b), Interlake moved for a separate trial on the issue of its expenses in defending the action brought by plaintiff. The asserted grounds for the motion were that submission of the issue to the jury would be inconvenient, prejudicial, and at that stage of the trial impossible.
 
 
 13
 The court denied Interlake's motion. Interlake then moved to withdraw that issue from the case. This motion was also denied unless Interlake would agree to withdraw the issue with prejudice. Interlake did not agree and submitted no evidence thereon. It is now claimed that expenses of defense were unascertainable in amount until final disposition of the case.
 
 
 14
 A single trial tends to lessen delay, expense, and inconvenience. The granting of separate trials rests in the discretion of the trial judge. Rule 42(b) obviously is not mandatory. For this reason Interlake cannot now be heard to complain about the district court's denial of the motion for separate trials.
 
 
 15
 In its cross-appeal North Western contends that the jury by its verdicts found both Interlake and North Western concurrently negligent, but not equally so; and that since Interlake was the "direct and primary" cause of the occurrence, it failed in its proof in the third party action against North Western. Upon these premises, it is argued that the district court erred in not entering judgment for the railroad notwithstanding the verdict.
 
 
 16
 North Western maintains that indemnity upon tort grounds is merely contribution and that contribution is precluded in noncollision maritime cases. We agree. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1962), is authority for the proposition. The railroad then contends that, since the jury indicated by its verdict in the third party action that Interlake was the primary cause of the occurrence, the latter had no right to indemnification upon contract grounds. In support of this proposition, we are referred to the following language in Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958): "If * * * respondent [stevedore] rendered a substandard performance which led to foreseeable liability of petitioner [shipowner], the latter was entitled to indemnity absent conduct on its part sufficient to preclude recovery." (Emphasis added.)
 
 
 17
 Despite the quoted language, we are of the opinion that any conduct on the part of Interlake which rendered it liable in damages to Ammesmaki was no bar to its right to recover for the breach of the railroad's warranty to maintain its dock in a reasonably safe condition. In Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court held that even in the absence of an express agreement of indemnity, a stevedore's breach of its contract to store cargo safely constituted grounds for indemnity. The Court said, at 134-135, 76 S.Ct. at 238: "Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense." In Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 321, 84 S.Ct. 748, 752, 11 L.Ed. 2d 732 (1964), the Court reaffirmed the doctrine, saying: "Recovery in contribution is imposed by law and is measured by the relative fault of the joint tortfeasors or shared equally between them * * *; while recovery in indemnity for breach of the stevedore's warranty is based upon an agreement between the shipowner and stevedore and is not necessarily affected or defeated by the shipowner's negligence, whether active or passive, primary or secondary." Consequently, there was no error in the district court's denial of North Western's post-verdict motion.
 
 
 18
 In its instructions, the district court told the jury that Interlake had the burden of proving it "was not guilty of negligence in providing for the safety of its employees, including plaintiff" and the further burden of proving that "negligence of the third party defendant was the sole proximate cause of the injury to the plaintiff." Interlake contends that if the judgment is not corrected as requested, a new trial should be directed because the foregoing instructions were erroneous. We agree. Both Ryan and Weyerhaeuser clearly indicated that the negligence of a shipowner does not bar indemnity from a dockowner for the breach of a warranty to maintain the dock in a reasonably safe manner. Accord, DeGioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962).
 
 
 19
 Moreover, the instructions to the jury were prolix and complicated. The various subjects to which the charge was addressed were juxtaposed in a confusing manner. It is not difficult to surmise why the jury rendered a verdict not in accord with the instructions.
 
 
 20
 The judgment appealed from is reversed and the cause remanded for a new trial.
 
 
 21
 SCHNACKENBERG, Circuit Judge (partly concurring and partly dissenting).
 
 
 22
 Although I concur in that part of Judge Swygert's opinion dealing with Interlake's contention that it was denied a fair trial upon the issue of reasonable attorneys' fees and costs incurred in the main action, I am required to dissent from the opinion insofar as it reverses this case and places upon the parties the burden of a new trial, which I believe is unnecessary.
 
 
 23
 I would affirm the judgment, except as to the amount thereof and, as to the amount of the judgment, I would reverse and remand this cause to the district court with directions to amend said judgment by increasing the amount of damages awarded to Interlake from $11,958.70 to $54,357.75.
 
 My reasons are as follows:
 
 24
 1. The action was brought by Leonard Ammesmaki to recover damages for personal injuries occurring on a dock of Railway at Escanaba, Michigan. He sued both Railway and Interlake, his employer. The suit against Railway was asserted upon diversity of citizenship, but was dismissed for lack thereof. The action against Interlake was based upon the Jones Act, 46 U.S.C.A. § 688 and upon the general maritime law. Upon dismissal of Railway from the principal action, Interlake filed a third-party action against Railway seeking indemnity in full for all sums recovered by plaintiff against Interlake and for its costs of defense. A trial before a jury resulted in a verdict of guilty in the principal action against Interlake in the sum of $54,357.75 and a verdict of guilty in favor of Interlake against Railway for $11,958.70, in the third-party action. The amount of damages to the injured plaintiff as assessed in plaintiff's action ($54,357.75) is not disputed by either party to this appeal. Interlake and Railway both appeal from the judgment in the third-party action only.
 
 
 25
 2. Interlake now contends the district court erred in failing to correct the amount of the judgment in the third-party action to conform to the amount of $54,357.75 awarded Ammesmaki in the principal action.
 
 
 26
 The jury was instructed, inter alia, as follows:
 
 
 27
 "You must determine whether third party defendant Chicago & North Western Railway Company did or did not perform its agreement to keep its dock in reasonably safe condition, if you find from the preponderance of the evidence that it made such agreement, either directly or impliedly.
 
 
 28
 "If you find said railway company failed to exercise reasonable care to maintain its dock in reasonably safe condition for the passage of seamen, then I instruct you that said railway company was guilty of breach of its agreement, if any, with defendant The Interlake Steamship Company. Accordingly, if you should further find from the preponderance of the evidence that said breach of agreement, if any, by defendant Chicago & North Western Railway Company was the sole proximate cause of the defendant The Interlake Steamship Company's becoming liable in damages to the plaintiff, then you are directed to return a verdict of guilty against said railway company in the amount of the damages, if any, which by your verdict, if any, you have awarded to the plaintiff."
 
 
 29
 Interlake contends this instruction was mandatory and that it was disregarded by the jury when it awarded damages to Interlake in an amount substantially smaller than the amount awarded to plaintiff when the jury found Railway guilty. Under this instruction, the jury in the third-party action was not justified in awarding an amount smaller or larger than the total amount of damages awarded in the principal action. The amount of damages sought in the third-party action was therefore definite and determined by the amount awarded to plaintiff in the principal action.
 
 
 30
 The position I take is in harmony with the following instruction given by the court:
 
 
 31
 "In order for the third party plaintiff, The Interlake Steamship Company, to recover on its third party complaint against the Chicago & North Western Railway Company, it has the burden of proving each of the following propositions by the preponderance of the evidence:
 
 
 32
 "First, that third party plaintiff before and at the time of the occurrence, was not guilty of negligence in providing for the safety of its employees, including plaintiff.
 
 
 33
 * * * * * *
 
 
 34
 "Fourth, that the negligence of the third party defendant was the sole proximate cause of the injury to the plaintiff.
 
 
 35
 "Fifth, that the negligence of the third party defendant, the railroad, was the sole proximate cause of the damages sustained by the third party plaintiff.
 
 
 36
 "If you find from your consideration of all of the evidence that each, meaning all, of these propositions has been proved by the preponderance of the evidence, then your verdict should be for the third party plaintiff as to his [sic] third party complaint, and against the railroad. * * *"
 
 
 37
 It is therefore implicit in the jury's verdict of guilty against Railway that it found Railway's negligence to be the sole proximate cause of the damages sustained by Interlake and that it was therefore bound to award to Interlake in the third-party action damages in the amount of $54,375.75, being the full amount of the damages awarded to plaintiff in the principal action. Cf. Horton v. Moore-McCormack Lines, Inc., 2 Cir., 326 F.2d 104, 107 (1964).
 
 
 38
 In principle the law applies the same in this case as it did as to a seaman's injuries caused by the negligent dereliction of a stevedore in Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, at 323, 84 S.Ct. 748, at 753 (1964), where, the court pointed out:
 
 
 39
 "* * * The shipowner defers to the qualification of the stevedoring contractor in the selection and use of equipment and relies on the competency of the stevedore company." I choose to apply the rule used by the court in Horton, supra, 326 F.2d p. 108, where it said:
 
 
 40
 "It is within our power as an appellate court to correct the verdict * * * and it is our duty to do so. * * *"
 
 
 41
 Accordingly, I would return this case to the district court with directions that it enter judgment in the third-party action in favor of Interlake and against Railway for $54,357.75.
 
 
 42
 3. Having disposed of Interlake's appeal, I find it necessary to deal with the appeal of Railway, which maintains that Interlake by its own negligent acts brought about the occurrence and therefore is not entitled to the judgment, even in the sum of $11,958.70, based on the jury's verdict. Railway asserts that it should be granted judgment notwithstanding that verdict. I reject Railway's contention, which, if sustained, would require a determination as a matter of law of the question of whether Interlake was guilty of negligence in furnishing a contributing cause of the accident. That is a determination which we have no right to make where, as here, the relevant questions were passed upon by a jury.