Anthony **FALLETTA**, Plaintiff-Appellant-Appellee,

v.

**COSTA ARMATORI, S.p.A. GENOA**, Defendant and Third-Party Plaintiff-Appellant-Appellee,

v.

**UNIVERSAL TERMINAL & STEVEDORING CORP.**, Third-Party Defendant-Appellant-Appellee.

Nos. 597, 598 and 599, Dockets 72–1946, 72–2034 and 72–2035.

United States Court of Appeals, Second Circuit.

Argued March 22, 1973.

Decided April 5, 1973.

---

Edward D. Lory, Brooklyn, N. Y. (Paul A. Gritz, Brooklyn, N. Y., on the brief), for plaintiff-appellant-appellee.

Michael D. Martocci, New York City (Yamada & Martocci, New York City, on the brief), for defendant and third party plaintiff-appellant-appellee.

Albert S. Commette, New York City (Brown, Quencer & Commette, New York City, on the brief), for third party defendant-appellant-appellee.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

We have here a familiar longshoreman-shipowner-stevedore legal battle; what is somewhat unusual, however, is that all three parties appeal from the judgment of the trial court.[1] After a non-jury trial in the United States District Court for the Southern District of New York, Judge Lawrence W. Pierce held, first, that defendant Costa Armatori S.p.A. Genoa, owner and operator of the vessel Paola Costa, was liable to plaintiff Anthony Falletta on theories of unseaworthiness and negligence; that plaintiff had been contributorily negligent to the extent of ten per cent in causing the accident, reducing his award to approximately $5,855; and finally, that as a result of plaintiff's contributory negligence, his employer, Universal Terminal & Stevedoring Corp., was required to indemnify the shipowner. As indicated, none of the parties is happy with this result.

Plaintiff-longshoreman was · injured while cargo was being unloaded from the ship. He was struck in the head just above the right eye by a free-swinging "burton boom lazy guy"—in Judge Pierce's less esoteric term, a steel wire. The impact knocked plaintiff down and he injured his shoulder. Plaintiff was left with a scar over his eye and, as the judge found, "a permanent partial loss of use of the right arm."

On appeal, both plaintiff and his stevedore employer claim that the judge erred in holding plaintiff contributorily negligent. The stevedore has an even greater interest than plaintiff in establishing that proposition. The finding of contributory negligence cost plaintiff only $650 (reducing by ten per cent his damages of approximately $6,500). But in the shipowner's action against the stevedore, based upon the latter's breach of warranty of workmanlike service, plaintiff's contributory negligence became the sole basis for holding his em-

---

1. This triangular controversy should soon be a thing of the past by virtue of the Longshoremen's and Harbor Workers' Compensation Act Amendments. P.L. 92–576, § 18, 86 Stat. 1251 (1972). The amendments increased workmen's compensation benefits available to an injured longshoreman from his employer, eliminated a longshoreman's recovery against the shipowner for unseaworthiness although continuing to allow it for negligence, and eliminated stevedore indemnity to the shipowner for such damages. See U.S.Code Cong. & Adm.News, pp. 4702, 4704–4705 (1972).

ployer, the stevedore, liable for the full amount of plaintiff's recovery ($5,855), as well as for such incidental items as counsel fees.[2] By contrast, while not denying its own negligence, the shipowner claims that the finding that plaintiff was only ten per cent contributorily negligent was clearly erroneous. How much more would have been correct the shipowner does not squarely say, except to assert that plaintiff's "own negligence substantially contributed to the cause of the accident."

■■ The judge held plaintiff contributorily negligent because he was working in a dangerous place without paying sufficient attention to what was going on elsewhere on the deck. Plaintiff had been instructed by his hatch boss to remove certain hatch covers preparatory to unloading that hatch, and was in the process of doing so when the accident occurred. In addition, when plaintiff started his work, the ship's crew had not yet started the unrigging operation that led to the accident. Therefore, up to that point plaintiff was not negligent; all appear to agree on that. But, according to the judge, when plaintiff

> observed the crew enter the area and begin to work as usual, i. e., to unrig, he knew or should have known of the danger to his safety and he was therefore under an obligation to stand clear of the danger zone.

The difficulty with this theory is that a number of longshoremen were working on the hatch in full view of the ship's crew when the latter began to disengage the jumbo boom and negligently unshackled the burton boom lazy guy. If plaintiff could see the deck crew some distance away, as the judge emphasized, they obviously could see him. The judge assumed as much and also concluded that the crew members "should have warned

plaintiff prior to commencing the concededly potentially dangerous unrigging operation." Under the circumstances here, plaintiff could not properly be regarded as negligent. As we noted under somewhat different circumstances in Sheehan v. Moore-McCormack Lines, Inc., 441 F.2d 360, 363 (2d Cir. 1971):

> . . . the longshoremen had a right reasonably to assume that . . . a warning would be given and they were under no obligation to anticipate that there would be a failure to fulfill that duty.

Judge Pierce felt that *Sheehan* was distinguishable because in that case responsible officers of the ship were in the area supervising the activities of the crew and longshoremen, while plaintiff here could not "reasonably entrust his safety entirely to anyone in particular." But on these facts we do not regard that distinction as an adequate reason for ignoring the principle of *Sheehan*. Plaintiff here could justifiably rely on non-negligent unrigging by the ship's crew. Cf. International Terminal Operating Co. v. N. V. Nederl. Amerik Stoomv. Maats., 393 U. S. 74, 89 S.Ct. 53, 21 L.Ed.2d 58 (1968) (per curiam). The shipowner calls our attention to Cannady v. S. S. Carlin Fassio, 1966 A.M.C. 2434 (D.N.J.), aff'd per curiam, 358 F.2d 304 (3d Cir. 1966), but there the known, visible, overhead risk of harm to the plaintiff was much greater. We hold that the district court's conclusion of contributory negligence, to which the "clearly erroneous" standard of appellate review does not apply, see J. Gerber & Co. v. S. S. Sabine Howaldt, 437 F.2d 580, 594 (2d Cir. 1971); Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776–778 (2d Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966), cannot stand on this record.[3]

---

2. The stevedore also argues that the shipowner was not entitled to indemnity in any event because its crew was guilty of "conduct sufficient to preclude recovery" relying, e. g., on Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), and Bertino v. Polish Ocean Line, 402 F.2d 863, 866 (2d Cir. 1966).

3. On this view of the case, it is unnecessary to deal with the stevedore's remaining argument. See note 2 supra.

The judgments for plaintiff against the shipowner and for the shipowner against the stevedore are reversed with instructions to enter a new judgment for plaintiff and a judgment for third-party defendant stevedore in accordance with this opinion.