McNULTY, Judge.
This originated as a three party maritime action in which a longshoreman sued appellant Maritime Fruit Carriers (hereinafter shipowner) for injuries sustained while unloading the vessel ANON ACORE, and in which the shipowner filed a third-party complaint for indemnification over against the longshoreman’s employer, Luckenbach Steamship Co., Inc. (hereinafter stevedore). The accident allegedly occurred when a wooden ladder supplied by the shipowner slipped on the icy deck of a refrigeration hold causing the plaintiff to fall.
As against the shipowner there was some evidence that contrary to certain safety rules the ladder did not have rubber safety feet; it did not have tie ropes and was not tied; and it did not extend far enough above the deck against which its upper end rested. There was evidence too, as against the stevedore, that all the longshoremen had been instructed by their “header” (the foreman or gang leader) to assist one another by holding or securing the ladder to prevent its slipping and that this was not done in this case.
The case went to the jury on all issues. A verdict was rendered in favor of the longshoreman against the shipowner, but against the shipowner and in favor of the stevedore in the third-party action. The *672 shipowner now appeals that portion of the judgment in favor of the stevedore urging, in the one point meriting discussion, that the trial judge erroneously charged the jury as will hereinafter more fully appear. We agree and reverse.
At the outset we point out that federal maritime law governs since substantive admiralty rights are defined in Acts of Congress and by interpretative decisions of the federal courts.[1] Under federal law, then, we find that historically in this type case longshoremen were making recoveries for injuries against shipowners either because of negligence on the part of the ship’s crew or because of unseaworthiness of the vessel, its equipment or appliances even though such unseaworthiness was primarily caused through the fault of the stevedore. This was so because the shipowner had the same non-delegable duty of maintaining seaworthiness for the safety of the longshoremen as it had for the safety of seamen on the vessel.[2] At the same time, however, shipowners were barred from seeking indemnification over against the stevedore because of the common law rule against contribution between joint tortfeasors.[3]
But in 1956 the United States Supreme Court decided Ryan Stevedoring Co. v. Pan-Atlantic[4] wherein it was held that a shipowner who had been held liable to a longshoreman for unseaworthiness could recover over against the stevedore if such unseaworthiness was caused or contributed to through the fault of the stevedore. Recovery over was allowed not as a departure from the joint tortfeasor rule, however, but rather on the theory of breach of an existing implied warranty of workmanlike services flowing from the stevedore in favor of the shipowner and arising out of their contractual relationship.
This principle was then extended by that court in Weyerhaeuser S. S. Co. v. Nacirema Operating Co.[5] While the longshoreman in Ryan recovered against the shipowner for unseaworthiness, in Weyerhaeu-ser he recovered on the basis of negligence. Indeed, the jury expressly found in favor of the shipowner and against the longshoreman on the issue of unseaworthiness. Because of this the trial judge apparently concluded that since the Ryan decision was predicated on unseaworthiness the principle set forth therein precluded indemnification from the stevedore if, as so found by the jury, the ship was seaworthy. He thereupon directed a verdict against the shipowner and in favor of the stevedore. The Supreme Court reversed, however, holding, in effect, that the independent contractual relationship between them which was recognized in Ryan may be the basis of a cause of action regardless of what issues may have existed or may have been decided as between the shipowner and an injured longshoreman employee of the stevedore. The point is, that the obligation of the stevedore to the shipowner is different from that of the shipowner to the longshoreman; and it may form the basis of an independent action.
Weyerhaeuser, supra, was thereafter followed in a case arising out of Florida by the Fifth Circuit Court of Appeals in Grace Lines v. Port Everglades Terminal *673 Co.[6] There, indeed, the longshoreman abandoned his claim of unseaworthiness before the case went to the jury; but he recovered a verdict against the shipowner on the theory of negligence. Obviously as a consequence of the abandonment, and thus presuming seaworthiness, the trial judge directed a verdict for the stevedore. In reversing the Fifth Circuit Court stated:
“. . . [I]n Weyerhaeuser S. S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), the Court ruled that, even where the injured stevedore had recovered a verdict against the shipowner on grounds of negligence, not unseaworthiness, and there was no express indemnity clause, the stevedoring contractor is obliged to perform with reasonable safety and to discharge foreseeable damages resulting from the contractor’s improper performance, meaning indemnification of the shipowner. Moreover, it held that the shipowner was entitled to a jury trial, under appropriate instructions, of disputed factual issues on its claim for indemnity against the contractor, after the verdict in the main case. This is required because the liability of the contractor depends on principles different from those governing liability of the shipowner. . . .” (Emphasis theirs.)
We think it is now clear, therefore, that as these cases have evolved it makes no difference upon which theory a longshoreman may recover from a shipowner, i. e., unseaworthiness or negligence; the stevedore has an independent obligation arising out of the stevedoring contract and the shipowner is still entitled to make a claim over against the stevedore for a breach thereof.
Now, in this case, as between the shipowner and the stevedore, the court properly submitted to the jury the issue of whether the stevedore failed to unload the cargo in a workmanlike manner and with reasonable safety. Over the objection of the shipowner, however, he further charged that:
“If the ship is not found to be unseawor-thy, then there can be no recovery on implied warranty against the stevedore.”
The effect of this charge is that the shipowner’s right of indemnification must be predicated solely on unseaworthiness caused in some degree by the wrongful acts of the stevedore. This is not the law.
An independent relationship exists between the shipowner and the stevedore out of which an action may lie in favor of the shipowner for a breach of an implied warranty of workmanlike services. This breach can occur in any number of ways, including negligence, which may have nothing to do with causing or contributing to the unseaworthiness of the vessel, its equipment or appliances.[7] It was wrong, then, to limit the shipowner’s right of recovery to the issue of unseaworthiness alone.
Accordingly the judgment appealed from should be, and it is hereby, reversed; and the appellant shipowner is awarded a new trial.
Reversed.
MANN, C. J., and GRIMES, J., concur.

. See, Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); and Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

. See, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

. See, Pope & Talbot, Inc. v. Hawn, n. 1 supra, and Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). See, also, the excellent commentary on the whole matter by Harney B. Stover, Jr., in 61 Michigan Law Review (1962-63) at p. 539.

.350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

. 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

. 324 F.2d 699 (5th Cir. 1963).

. Cf. Grace Lines v. Port Everglades Terminal Co., n. 6 supra.