677 F.2d 388
 1993 A.M.C. 2399
 SALTER MARINE, INC. and C&P Towing Co., Inc., Appellees,
v.
CONTI CARRIERS AND TERMINALS, INC. and Continental Grain
Co., Appellees,
and
ALLIED TOWING CORPORATION, Claimant,
v.
SOUTHERN STATES COOPERATIVE, Appellant.
 Nos. 81-1822, 81-1851.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 2, 1982.
Decided April 22, 1982.
 
 William B. Eley, Norfolk, Va. (Eley, Rutherford & Leafe, Norfolk, Va., on brief), for appellant/cross-appellee.
 Walkley E. Johnson, Jr., Norfolk, Va. (Crenshaw, Ware & Johnson, Norfolk, Va., on brief), and Philip N. Davey, Norfolk, Va. (Richard T. Robol, Seawell, Dalton, Hughes & Timms, Norfolk, Va., on brief), for appellees/cross-appellants.
 Before MURNAGHAN, ERVIN and CHAPMAN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 On February 8, 1979, the Tug Evelyn, owned by Salter Marine, Inc. and bareboat chartered to C&P Towing, Inc., took in tow at Norfolk, Virginia, the Barge CNC-504, owned by Conti Carriers and Terminals, Inc., a wholly owned subsidiary of Continental Grain Company. The tug proceeded to the grain loading facility of Southern States Cooperative at Seaford, Delaware where it was to take on a cargo of soybeans purchased by Continental from Southern States. Southern States employees loaded the cargo onto the barge beginning early in the morning of February 9 and continuing throughout the day and night until about 3:00 A.M. on Saturday, February 10. When the tug and barge left Seaford for Norfolk the barge was listing considerably. Approximately fifteen hours after departure, when the tug and barge had left the Nanticoke River and entered the Chesapeake Bay, the weather, which had been clear and cold in Seaford, unexpectedly worsened. The barge's list increased, and at about 9:50 P.M., the barge capsized and sank, resulting in damage to the barge and total loss of the cargo.
 
 
 2
 Salter, the owner of the tug, and C&P, the bareboat charterer, instituted the present action by filing a petition for exoneration from or limitation of liability for damage claims arising out of the sinking of the barge. Claims were filed by Continental and Conti, owners of the cargo and barge, and by Allied Towing Corporation, which had subcontracted the towing job to C&P. Continental and Conti cross-claimed against Allied, C&P counterclaimed against Allied, and Allied cross-claimed against Continental. Salter and C&P then impleaded Southern States, and Continental and Conti filed cross-claims against Southern States.
 
 
 3
 Continental's claims against C&P were settled for $143,629.34, the stipulated value of the tug and pending tug hire. Allied and Continental voluntarily dismissed their claims against one another. The case was tried to the court on the claims of C&P against Allied for Allied's alleged breach of contract and the claims of Continental and C&P against Southern States for negligence or breach of warranty in connection with Southern States' duties as stevedore in loading the grain.
 
 
 4
 The district court found, inter alia, that the listing of the barge at the time it left Seaford was caused by improper loading procedures employed by Southern States, and that the list was a direct cause of the barge's capsize. The court also found that the tug's crew acted reasonably in leaving Seaford although the barge was listing. Accordingly, judgment was entered against Southern States in favor of Salter and C&P on their indemnity claim in the amount of $143,629.43,[1] and in favor of Continental and Conti on their damage claims for $292,892.56. The indemnity claims of Salter and C&P against Allied Towing were denied.
 
 
 5
 On appeal, Southern States contends that it owed no duty of workmanlike performance to Salter and C&P, and that, in any event, the negligence of the tug's crew relieves it of liability to all parties. Continental and Conti cross-appeal, arguing that the district court's failure to award prejudgment interest was error.
 
 I.
 
 6
 Southern States concedes that it owed a duty to Continental and Conti, owners of the barge and cargo, to perform the stevedoring operations in a workmanlike manner. See, e.g., Weyerhauser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). It contends, however, that it owed no duty to Salter and C&P, the owner and charterer of the tug. We are persuaded otherwise.
 
 
 7
 The Supreme Court has on several occasions rejected the claim that the warranty of workmanlike performance extends only to those in contractual privity with the stevedore. See, e.g., Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960) (where consignee of cargo contracts with stevedore, warranty of workmanlike performance extends to shipowner); Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959) (where stevedore contracts with charterer to transfer cargo, warranty of workmanlike performance extends to shipowner). We held in Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79, 81-82 (4th Cir. 1967), that the stevedore's warranty extends directly to employees of the shipowner, since as "foreseeable third parties" they fall within the "zone of responsibility."
 
 
 8
 Here it was unquestionably foreseeable that the owner and charterer of the tug might be injured if the stevedore performed improperly. The barge was unmanned, and it depended on the tug for locomotion as well as on its crew for monitoring once it left Seaford. It was the tugmaster who signed the receipt for the cargo loaded onto the barge. For practical purposes, the tug and barge were merged into a single vessel. We find no error in the district court's implicit holding that the owner and operator of the tug were foreseeable third parties.
 
 II.
 
 9
 Southern States next asserts that, since the tugmaster knew the barge was listing when he left Seaford, he should not have left at all. The actions of the tug, it is argued, shield Southern States from liability.
 
 
 10
 It is uncontested that Southern States personnel improperly loaded the barge and breached their duty of workmanlike performance. The equipment used was inadequate; the spout through which the grain was loaded extended only partially across the barge. As a result the grain was loaded unevenly, and peaks formed. It was estimated that twenty men would have been required to load the barge properly, but only three were provided, and they had little experience loading barges. Moreover, after completing the job the three men left the loading site over three hours before the barge was able to depart. No Southern States employees were available to correct the listing barge when it was prepared to leave.
 
 
 11
 What is disputed is whether the decision of the tugmaster to leave Seaford relieves Southern States of liability for its breach of the warranty. The district court found that the tugmaster fulfilled his obligation to "perform his duties with such reasonable care and maritime skill as prudent navigators usually employ in similar undertakings." Slip op. at 18, quoting Curtis Bay Towing Co. v. Southern Lighterage Corp., 200 F.2d 33, 35 (4th Cir. 1952). Since Southern States' liability is not affected by the tugmaster's actions if they were reasonable, our inquiry is whether there was evidence to support the district court's finding.[2]
 
 
 12
 There was evidence that when the tugmaster discovered that the barge was listing, the loading crew had departed, and was thus unavailable to correct the condition. The forecast was for excellent weather. The tugmaster had often towed listing barges, and in light of the weather conditions he did not foresee any danger. Weather conditions remained favorable for some time after the tug and barge left Seaford, and the forecast had not changed when they reached the Chesapeake Bay. At that point, about thirteen hours into the trip, the listing had not worsened. Subsequently, weather conditions began to change for the worse, and the master posted a lookout to watch the barge. The listing increased as the weather deteriorated, and finally the barge capsized.
 
 
 13
 In light of that evidence, we cannot conclude that the district court's finding that the tugmaster performed his duties with reasonable care was clearly erroneous. Accordingly, we find no conduct on the shipowner's part "sufficient to preclude recovery." Weyerhauser S.S. Co. v. Nacirema Operating Co., supra, at 567, 78 S.Ct. at 440.[3]
 
 III.
 
 14
 Continental and Conti cross-appeal, contending that the district court's failure to award prejudgment interest was error. "The award of prejudgment interest in admiralty cases rests within the sound discretion of the district court." Ameejee Valleejee and Sons v. M/V Victoria U., 661 F.2d 310, 313 (4th Cir. 1981). Here, however, the court made no reference in its opinion to prejudgment interest. We are therefore unable to determine whether the failure to award interest was an oversight or a conscious exercise of the court's discretion, and, if the latter, the record does not show the basis on which the court exercised its discretion. We, therefore, remand so that the district court can correct its oversight or disclose the reasons why it chose not to award prejudgment interest. Cf. Ameejee Valleejee, supra, at 313-14 (where the district court had allowed prejudgment interest at a rate of 6%, but had articulated no reason for choosing a rate below the prevailing commercial rate, appellate scrutiny to determine whether there had been abuse of discretion was impossible, and remand was required).
 
 
 15
 AFFIRMED IN PART AND REMANDED.
 
 
 
 [1]
 We note the nine cent discrepancy between the amount Southern States was required to indemnify C&P-$143,629.43-and the amount of the settlement between C&P and Continental-$143,629.34. The discrepancy, attributable no doubt to a trivial inadvertence, is unaccounted for in the record, so we shall assume that the higher figure used by the district court was correct
 
 
 [2]
 Even if the tugmaster's actions were negligent, that would not necessarily relieve Southern States of liability, since recovery "for breach of the stevedore's warranty is based upon an agreement between the shipowner and stevedore and is not necessarily affected or defeated by the shipowner's negligence, whether active or passive, primary or secondary." Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 321, 84 S.Ct. 748, 752, 11 L.Ed.2d 732 (1964)
 
 
 [3]
 Southern States relies on the last clear chance and intervening cause doctrines. Since neither doctrine can serve to impose liability on a party who exercised reasonable care, see generally 2 F. Harper & F. James, The Law of Torts §§ 20.6(5), 22.13 (1956), and since the last clear chance doctrine operates to permit a negligent plaintiff to recover against a negligent defendant rather than to bar recovery, id. at § 22.13, we need not decide whether either can apply with respect to breach of the warranty of workmanlike performance. However, we note that, to the extent either doctrine would imply that the shipowner's negligence necessarily bars recovery, its application is precluded by Italia Societa. See note 2 supra